Joseph J. ZILBER and Vera Zilber,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 78-1344.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1978.

Decided Oct. 24, 1978.

Stanley P. Gimbel, Milwaukee, Wis., for plaintiffs-appellants.

William J. Mulligan, U. S. Atty., Milwaukee, Wis., M. Carr Ferguson and Thomas M. Walsh, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before CUMMINGS, PELL and WOOD, Circuit Judges.

PER CURIAM.

This suit was brought for the refund of income taxes collected from plaintiffs (husband and wife) residing in Milwaukee, Wisconsin. The taxable years in question are 1971 and 1972. Joint federal income tax returns were filed for those and earlier years. The case was disposed of upon the parties' stipulation of facts which showed as follows:

For 1971, plaintiffs reported for federal income tax purposes gross taxable salaries of $101,000, dividends of $8,874 and interest of $87,486. They also reported a net operating loss of $462,067 "resulting primarily from losses of partnerships in which they had an interest." They also reported $270,-222 in tax preference items as defined by Sections 57(a)(2), 57(a)(3) and 57(a)(9) of the Internal Revenue Code of 1954. Upon audit, the Internal Revenue Service increased that amount to $282,729, without exception by plaintiffs. Applying Section 1.57-4(b)(1)(ii) of the Income Tax Regulations,[1] the Internal Revenue Service determined that $208,587 of the tax preference items

---

1. This Section of the Income Tax Regulations was proposed on December 30, 1970, to conform the Regulations to Section 301 of the Tax Reform Act of 1969 (83 Stat. 580). This Section of the Regulations became final on September 11, 1978, and was limited to taxable years beginning before January 1, 1976. See 43 Fed.Reg. 40461, 40487.

were taxable under the minimum tax provisions of the Internal Revenue Code of 1954 (§§ 56–58) and that a tax of $17,858.70 was due thereon.[2]

For 1972, the taxpayers reported gross taxable salaries of $239,600, dividends of $13,991 and interest of $109,950. They reported a net operating loss of $136,352, primarily resulting from partnership losses. They also reported $167,530 in tax preference items, but this amount was increased by the Internal Revenue Service to $174,792, without exception by plaintiffs. Applying the limitation contained in Section 1.57–4(b) of the Regulations, the Commissioner determined that $173,262 of the tax preference items were taxable under the minimum tax provisions of the Internal Revenue Code (§§ 56–58) and that a tax of $14,175 was due thereon.[3]

The plaintiffs carried back their 1971 and 1972 net operating losses to 1968 and 1969 respectively pursuant to Section 172 of the Code and received a full refund for their tax liability for those two years. By virtue of Section 172(d)(2) of the Internal Revenue Code, $45,878 and $90,232 of the amounts shown as net operating losses could not be carried back to those years because they were attributable to the 50 per cent capital gains deduction allowed by Section 1202 of the Internal Revenue Code.

After paying the $17,858.70 assessment of minimum tax deficiencies plus interest for 1971 and the $14,175 assessment plus interest for 1972, this refund complaint was filed. Plaintiffs asserted that the minimum tax should not have been imposed at all, or in the alternative that it should have been imposed only on the items of preference that actually generated a tax benefit.[4] They argued as follows:

**2.** The taxable preference items of $208,587 were reduced by the minimum tax exemption of $30,000 and a 10 per cent tax rate applied as provided in Section 56(a) of the Code.

**3.** This represents a 10 per cent tax on the taxable preference items of $173,262, less the $30,000 minimum tax exemption for a minimum tax payable of $14,326. Since the plain-

"The minimum tax surcharge pursuant to Section 56 of the Internal Revenue Code has been erroneously and illegally assessed.

"The taxpayer had a net operating loss. Section 56 provides that the minimum tax is not imposed in a year in which a net operating loss is realized. The minimum tax is deferred and imposed as the loss is utilized. Since the items of tax preference creating the loss are utilized in years prior to 1970 (i. e., before Section 56 became applicable law), the minimum tax is not applicable. This is so because the assessed minimum tax is deemed imposed in pre-minimum tax years; therefore, no minimum tax can be imposed." (Attachments to Exhibits A and B to complaint.)

Plaintiffs' alternative theory, as asserted in the district court, was:

"As an alternative ground for this claim, the taxpayer submits that the minimum tax, if applicable, should have been in an amount of not more than $11,963.00.

"This is so because the Service's computations of tax preference items of $208,587.00 must be reduced by the amount of 1971 or 1972 loss carryback which was not and could not be utilized. The 1971 loss carryback of $475,141.00 could only be utilized to the extent of the 1968 taxable income of $416,189.00; thus, the taxpayer received no benefit from $58,952.00 of the loss and the tax is not applicable to at least that amount. The minimum tax cannot be payable on an amount of a loss carryover that by operation of law cannot be utilized." (*Ibid.*)

On appeal, however, the plaintiffs have asserted a slightly different alternative theory. They now argue that:

"Due to the application of Sections 172(b)(2) and 172(d)(2) of the Internal Revenue Code of 1954, $45,878 of the

tiffs had already reported and paid a minimum tax of $151, the additional tax due was $14,175.

**4.** In this setting, under the tax benefit rule, a minimum tax would not be assessed on items of tax preference where a taxpayer's tax liability is not reduced for any year as a result of the preference items.

Taxpayers' net operating loss for 1971 was not allowed or available as a carryover (carryback or carryforward) to 1968 or any other year.

"Similarly, due to the provisions of Sections 172(b)(2) and 172(d)(2), $90,232 of the Taxpayers' net operating loss for 1972 was not allowed or available as a carryover (carryback or carryforward) to 1969 or any other year." (Br. 3, 4).

Therefore, they conclude, since the amounts attributable to the capital gains deduction generated no tax benefit, they should be excluded from the taxable items of preference. This would make their 1971 minimum tax $13,271 and their 1972 minimum tax $5,303 ($4,588 lower for 1971 and $8,872 lower for 1972 than that assessed by the Government).

Both parties filed motions for summary judgment, and on November 29, 1977, the district court granted the Government's motion and filed a supporting memorandum and order. We affirm.

*The Minimum Tax Applies Where Net Operating Losses Are Carried Back to pre-1971 Taxable Years.*

In late 1969, Congress enacted a Tax Reform Act, Title III of which imposes a minimum tax for nine items of tax preference. The minimum tax provisions were meant to eliminate those situations where taxpayers with large incomes paid little or no taxes because their incomes were derived from enumerated specialized sources. This was considered by the legislators to result in an unfair distribution of the taxpayers' burden. See 1969–3 Cum.Bull. at 200, 249, 423, 498.

Commencing in taxable years ending after December 31, 1969,[5] the minimum tax provisions impose a 10 per cent tax upon certain "items of tax preference" which may be taxed even though the taxpayers would otherwise have no taxable income. See 26 U.S.C. § 56(a).[6] The nine items of tax preference include three types of preference items reported by plaintiffs in 1971 and in 1972 consisting of accelerated depreciation of real property, accelerated depreciation of personal property subject to a net lease, and the 50 per cent deduction for net long-term capital gains under Section 1202 of the Internal Revenue Code.[7]

There are two statutory exceptions to the minimum tax. Under the exception provided in Section 56(b)[8] of the minimum tax

---

5. Section 301(c) of the Tax Reform Act of 1969 establishes this as the effective date of this new tax.

6. Section 56(a) provided during these taxable years:

"(a) *In General.*—In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 10 percent of the amount (if any) by which—

"(1) the sum of the items of tax preference in excess of $30,000 is greater than

"(2) the sum of—

"(A) the taxes imposed by this chapter for the taxable year * * * reduced by the sum of * * * [certain enumerated credits] * * * and

"(B) the tax carryovers to the taxable year."

7. These three items of tax preference are covered by Sections 57(a)(2), 57(a)(3) and 57(a)(9)(A).

8. Section 56(b) provided during these taxable years:

"(b) *Deferral of tax liability in case of certain net operating losses.*—

"(1) *In General.*—If for any taxable year a person—

"(A) has a net operating loss any portion of which (under section 172) remains as a net operating loss carryover to a succeeding taxable year, and

"(B) has items of tax preference in excess of $10,000, then an amount equal to the lesser of the tax imposed by subsection (a) or 10 percent of the amount of the net operating loss carryover described in subparagraph (A) shall be treated as tax liability not imposed for the taxable year, but as imposed for the succeeding taxable year or years pursuant to paragraph (2).

"(2) *Year of Liability.*—In any taxable year in which any portion of the net operating loss carryover attributable to the excess described in paragraph (1)(B) reduces taxable income, the amount of tax liability described in paragraph (1) shall be treated as tax liability imposed in such taxable year in an amount equal to 10 percent of such reduction.

*  *  *  *  *  *

provisions, the minimum tax is deferred to the extent that it is imposed upon preference items which represent a net operating loss to be carried forward "to a succeeding taxable year." If in a succeeding year the net operating loss is applied to reduce income tax liability, the minimum tax will then be imposed. Section 56(b)(2) (note 8 *supra*). If that loss is never so employed, the tax will be deferred permanently. However, the 50 per cent deduction for net long-term capital gains may not be used in computing net operating losses. Sections 172(c) and (d) of the Internal Revenue Code.

The other exception to the minimum tax provision is designed to provide some relief from the minimum tax when the items of preference subject to the tax have not generated a tax benefit. Section 58(h), which was added to the minimum tax provisions by Section 301(d)(3) of the Tax Reform Act of 1976, directs the Secretary of the Treasury to prescribe appropriate regulations to "adjust" the minimum tax in this situation.[9] Those regulations have not yet been promulgated.

Plaintiffs' principal argument is that since the tax imposed by Section 56(a) applies only after December 31, 1969, there can be no minimum tax here where the tax benefits of the net operating losses for 1971 and 1972 were carried back to 1968 and 1969. However, no such exception to the minimum tax is provided by the statute or the Treasury Regulations. Indeed, Congress expressly rejected such an exception because Senator Miller's proposed amendment (115 Cong.Rec. 38,297) excepting from the minimum tax any net operating losses carried back to years before 1970 was not enacted.

Plaintiffs have asked us to look at the legislative history of the Tax Reform Act of 1976 to interpret Section 56(b) of the 1969 Act. However, that would be improper here where the 1969 statute is neither ambiguous nor vague. *International Trading Co. v. Commissioner of Internal Revenue*, 484 F.2d 707, 712 (7th Cir. 1973); *Wisconsin Cheeseman, Inc. v. United States*, 388 F.2d 420, 423 (7th Cir. 1968). In any event, House Report No. 658, 94th Cong., 1st Sess. (1976), U.S.Code Cong. & Admin. News 1976, p. 2897 states that the year in which the preference item arises, not the year in which the net operating loss is deducted, determines whether the 10 per cent rate under the Tax Reform Act of 1969 or the 15 per cent rate under the Tax Reform Act of 1976 applies. In other words, minimum tax is treated as if imposed in the year in which the preference item arose, so that here, as the district court observed (App. 7a), the minimum tax was properly imposed upon the tax preference items that arose in 1971 and 1972.[10]

The examples cited by the plaintiffs to support their argument are unpersuasive. They say that if 1976 preference items give rise to a loss which is carried back to offset 1975 income, these items will be subject to minimum tax at the 15 per cent rate applicable for 1976 rather than the 10 per cent rate applied in 1975. They also point out that for preferences arising in a fiscal year which falls partly in 1969 and partly in 1970, the minimum tax will be imposed only for that portion of the fiscal year which fell within calendar year 1970. Both of these examples are fully consistent with the concept of the minimum tax being imposed in

---

9. Section 58(h), which under Section 301(g) of the 1976 Act is not effective in taxable years prior to 1976, provides:

"The Secretary shall prescribe regulations under which items of tax preference shall be properly adjusted where the tax treatment giving rise to such items will not result in the reduction of the taxpayer's tax under this subtitle for any taxable years."

It is that inapplicable Section to which the Commentary in Journal of Taxation (Jan.1977) 24, on which plaintiffs rely, is addressed.

10. Plaintiffs rely on a statement in the Committee Report that "the minimum tax is imposed on those preferences when the net operating loss reduces taxable income." In context, this plainly refers to the payment of the minimum tax liability which has been deferred under Section 56(b) until the net operating loss is deducted.

the year the preference items arose rather than the year to which they are carried. Since the preference items at issue here arose in 1971 and 1972, the minimum tax liability also arose in those years. It is irrelevant that the income against which the preferences were offset in order to generate a tax benefit arose in a pre-minimum tax year.[11] It is the losses which are carried back, not the preferences. But it is the preferences—not the losses—which are subject to the minimum tax.

Besides this "wall theory," by which the plaintiffs seek to insulate tax preference items which give rise to losses which are offset against pre-1970 income, they also assert a tax benefit theory,[12] primarily to support their alternative calculation, which is discussed in the next section. There is no suggestion that carrying back the 1971 and 1972 losses did not generate a substantial tax benefit for the taxpayers, since it resulted in a refund of their whole income tax liability for 1968 and 1969. The plaintiffs' original contention that the minimum tax could be imposed only to the extent the losses generated were actually offset against income from prior years was not raised on appeal, and apparently was not pressed in the district court. We therefore need not decide whether that portion of a preference-generated net operating loss which is not exhausted by being carried back for the three years preceding the loss and therefore is available to be carried for-

ward,[13] is subject to the deferral provisions of Section 56(b). The deferral (and possible ultimate excusal) of the minimum tax provided in Section 56(b) remains applicable only when the net operating loss is carried forward "to a succeeding taxable year." This deferral mechanism does, to some extent, have the effect of excusing from the minimum tax preference items which generate losses when those losses do not result in a tax benefit.[14] This, however, was the only provision for excusal in the years in question. We therefore cannot create the requested excusal for preference-generated losses carried back to pre-minimum tax years.[15] There would be no reason to do so in any event where, as here, those losses did result in substantial tax benefits.

Plaintiffs rely on Revenue Ruling 74–317 (1974–2 Cum.Bull. 14) and Revenue Ruling 73–43 (1973–1 Cum.Bull. 37). Those rulings deal with a unique problem relating to contributions by trusts of capital gains set aside for charity and are inapplicable to this case. They also rely on Revenue Ruling 75–299 (1975–2 Cum.Bull. 21) which deals with an increase in a previously determined minimum tax based upon the carryback of a net operating loss. This ruling involves the proper calculation of minimum tax which was imposed without challenge and does not support plaintiffs' contentions that no minimum tax may be imposed upon these preference items. In fact, it confirms that

---

11. At oral argument, counsel for the plaintiffs asserted that a 1968 net operating loss carried forward to 1970 would be subject to a minimum tax at a 10 per cent rate (*i. e.*, at the rate applicable to the year to which the loss was carried). We think this misconstrues the statute. The loss itself is not taxed at all, nor are items of preference that arose before 1970. The only way a 1968 loss could give rise to minimum tax liability in 1970 would be by reducing 1970 income tax liability, thereby reducing the income tax deduction from the items of preference which arose in 1970. Such a result is not inconsistent with our holding in this case.

12. See note 4 *supra.*

13. Section 172(b) of the Internal Revenue Code provides that net operating losses may be carried back and offset against income for the three years preceding the loss. Any remaining

net loss may then be carried over for seven years (five years for losses incurred in pre-1976 tax years). For tax years beginning after 1975, a taxpayer may elect to forego the tax carryback and carry the whole loss forward. 26 U.S.C § 172(b)(3)(E).

14. This deferral does not result in excusing all preference items which do not generate tax benefits, since as explained *infra*, the capital gains deduction does not give rise to a loss carryover or carryback.

15. While plaintiffs rely on 29 N.Y.J. Institute on Federal Taxation (Part 2, 1971) 1453 and 1460 n. 16, the commentators do not state that the tax benefit theory will be applied to excuse the minimum tax where net operating losses have been carried backward.

the minimum tax liability arises in the year the preferences arise.

Plaintiffs also assert that the statement in *Norman O. Riley,* 66 T.C. 141, 144 (1976) that the minimum tax is "a self-contained unit of taxation" somehow supports their position. We fail to see how the *Riley* case, which held that the taxpayers may not average their tax preference income under the income averaging provisions of the Code, helps the plaintiffs here.

### *The Minimum Tax Was Properly Computed*

■ In the alternative, plaintiffs claim that their minimum tax liability for 1971 was $13,270.90 instead of the assessed $17,-858.70 and that the minimum tax for 1972 was $5,303 instead of the assessed $14,175. The difference between the Commissioner's and plaintiffs' calculations is because the taxpayers have treated their Section 1202 deduction for capital gains as if it were not a tax preference item in both taxable years. We uphold the Commissioner's calculation because Section 57(a)(9)(A) includes capital gains deductions as items of tax preference, as does Section 1.57–1(i)(1) of the Regulations.[16]

Section 1.57–4 of the Treasury Regulations spells out the limitation on amounts to be treated as items of tax preference for taxable years prior to 1976. Paragraph (c)[17] provides that "recomputed" taxable income or net operating loss is to be calculated without regard to the amounts described in Section 1.57–1 which, as noted, includes the capital gains deduction as a tax preference item. This method produces a higher minimum tax. If the capital gains deduction were treated as a non-tax preference item for this purpose, the result would be a smaller limitation and therefore a lesser minimum tax.

To avoid the language of the statute and the Treasury Regulations, plaintiffs assert that they should be excluded from paying the minimum tax to the extent that it is based upon a capital gains deduction which cannot be allowed in computing net operating losses by virtue of Sections 172(c) and (d) of the Code. However, as seen, as to these taxable years Congress has limited a tax benefit theory to deferral of the minimum tax where the net operating loss is carried forward to a succeeding taxable year.

The Section 1.57–4 limitation on taxable preference items, described above, is an attempt by the Internal Revenue Service to apply some tax benefit principles for years prior to 1976. As already described, however, the operation of that Regulation clearly excludes the result argued for by the plaintiffs. (See especially Section 1.57–4, example 3.) The addition in 1976 of Section 58(h) (note 9, *supra*), providing for the application of tax benefit principles to the minimum tax, does not affect the interpretation of the unambiguous statutory language as it existed in 1971 and 1972, and does not invalidate the contemporaneous Treasury Regulation which provided for somewhat less than total relief.[18]

Although plaintiffs quote Section 1.56–2(c) of the Treasury Regulations (43 Fed. Reg. 40467) as supporting their tax benefit theory, that Section is confined to allocating loss carryovers in "succeeding taxable years" and therefore does not support them. Likewise, Revenue Ruling 75–299 (1975–2 Cum.Bull. 21), stating that the carryover provisions of Section 172 "were designed by Congress to place taxpayers in the same position as if the loss had occurred in the

**16.** This Section of the Treasury Regulations appears at 43 Fed.Reg. 40475.

**17.** Paragraph (c) of Section 1.57–4 appears at 43 Fed.Reg. 40477.

**18.** Even if Section 58(h) did control here, it is not clear that it would invalidate the challenged regulation. Although the new Section directs an "adjustment" based on tax benefit principles, it does not necessarily follow that it re-

quires an abatement of the minimum tax every time any item of preference fails to generate a tax benefit. We note that Section 58(h) was passed in apparent approval of the Internal Revenue Service's efforts to apply tax benefit principles in this area. See Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976, reprinted in 1976–3 Cum. Bull. v. 2 at 118–119.

taxable year to which it is carried" does not apply because that carryover provision is not extended to capital gains deductions. See Sections 172(c) and (d).

Since the deduction for capital gains was correctly treated as a tax preference item, the Commissioner's calculations of the plaintiffs' minimum tax liabilities for 1971 and 1972 were correct.

Judgment affirmed.