**In re A.H. ROBINS COMPANY, INC., Debtor.**

**Bonnie ACKLES, et al.**

**v.**

**A.H. ROBINS COMPANY, INC.**

**Diana R. BEARD, et al.**

**v.**

**A.H. ROBINS COMPANY, INC.**

**Ruth ABRAMS, et al.**

**v.**

**A.H. ROBINS COMPANY, INC.**

**Bankruptcy No. 85–01307–R. Adv. Nos. 85–01020–R, 85–1021–R and 85–1022–R.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

March 14, 1986.

Patrick A. Murphy, Penn Ayers Butler, Michael Kip Maly, Murphy, Weir & Butler, San Francisco, Cal., William R. Cogar, Clifford W. Perrin, Jr., James S. Crockett, Jr., Linda J. Thomason, Mays, Valentine, Davenport & Moore, Richmond, Va., for debtor.

Carl A. Taylor Lopez, Lopez, Fantel, & Taylor, Seattle, Wash., Dennis B. Conklin, Conklin, Davis & Friedman, San Francisco, Cal., Patricia J. Hartman, St. Paul, Minn., Thomas Brandi, Bianco, Brandi & Jones, San Francisco, Cal., Judy Rentschler, Walkup, Downing, Shelby, Bastian, Melodia, Kelly & O'Reilly, San Francisco, Cal., Ronald P. Schneider, San Francisco, Cal., Richard Wexell, Fairfax, Va., John T. Baker, Bragg & Dubofsky, P.C., Denver, Colo., Bradley Post, Post, Syrios & Bradshaw, Wichita, Kan., Sydney L. Matthew, Tallahassee, Fla., James F. Szaller, Cleveland, Ohio, for plaintiffs.

David A. Strumwasser, Robert M. Miller, James M. Nolan, Bishop, Liberman & Cook, New York City, Ross C. Reeves, Willcox & Savage, P.C., Norfolk, Va., for Official Equity Sec. Holders Committee.

Gregory A. Harrison, Dept. of Justice, S. Davis Schiller, Asst. U.S. Atty., for the United States.

William C. White, United States Trustee.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on the plaintiffs' complaints for the entry of a declaratory judgment that 11 U.S.C. § 1141(d) is unconstitutional in that it denies them equal protection of the law in violation of the Fifth and Fourteenth Amendments of the United States Constitu-

tion.[1] The plaintiffs' principal allegation is that § 1141(d) discriminates against individuals by allowing a corporation to receive a broader discharge in bankruptcy.[2] Section 1141(d) provides that upon confirmation of a plan of reorganization a corporation shall be discharged of all its debts unless the plan provides for a liquidation of the corporation. An individual debtor is only discharged of his dischargeable debts, i.e., those debts that are excepted from discharge under § 523(a) are not discharged upon confirmation. As the plaintiffs' complaints present common issues of law and fact, and in the interest of judicial economy, the above-styled adversary proceedings have been consolidated pursuant to Federal Rule of Civil Procedure 42(a).

The debtor in possession in the above-styled case, A.H. Robins Company, Inc. ("Robins"), filed a motion to dismiss the plaintiffs' complaints, alleging that as § 1141(d) is in the nature of economic legislation, its constitutionality should be upheld as having a rational relationship to a legitimate governmental interest. The United States of America, having been notified of the challenge to the constitutionality of an Act of Congress as required by 28 U.S.C. § 2403, filed a brief in support of the constitutionality of § 1141(d), as did the United States Trustee, and the equity security holders committee.

A hearing was convened on February 14, 1986 to consider the issues raised in Robins' motion to dismiss and the responses thereto, and upon a review of the arguments of counsel and the briefs filed in this matter, the Court makes the following findings and conclusions of law.

## STATEMENT OF THE CASE

Robins filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on August 21, 1985. At that time, Robins had approximately 5,100 products liability suits pending against it in various state and federal courts. The liability claims arose almost exclusively from Robins' manufacture, sale, and distribution of the Dalkon Shield intrauterine device. Upon the filing of its petition, Robins made a motion for withdrawal of the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). Robins also requested that with the exception of certain matters the case be referred to the Bankruptcy Court. The order accomplishing this result, Administrative Order No. 1, was entered by the Honorable Rob-

---

**1.** In as much as the plaintiffs have asserted that § 1141(d) is in violation of the equal protection clause of the Fourteenth Amendment, it should be noted that the Fourteenth Amendment only applies to the states, not to the federal government. However, the United States Supreme Court has held that the Fifth Amendment Due Process Clause, which does apply to the federal government, contains the concept of equal protection, and, further, that the approach to an equal protection claim under the Fifth Amendment should be precisely the same as that under the Fourteenth Amendment. *See Weinberger v. Wisenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

**2.** 11 U.S.C. § 1141(d)(1). Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h) or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

(2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title.

(3) The confirmation of a plan does not discharge a debtor if—

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

(4) The court may approve a written waiver of discharge executed by the debtor after the order for relief under this chapter.

ert R. Merhige, Jr., United States District Court Judge, on the date of filing. (See Exhibit "A" attached.) Among the matters retained by the district court were issues relating to the dismissal of the case and the resolution of any claim arising out of Robins' potential liability from the Dalkon Shield.

The plaintiffs in the above-styled adversary proceedings are individuals alleging injury arising out of their use, or another's use, of the Dalkon Shield. Among the various allegations in the consolidated complaints, the plaintiffs assert that Robins failed to exercise reasonable care in the testing, inspection, and post-market supervision of the Dalkon Shield, and that Robins failed to warn the medical community and the public in general of the potential dangers of the intrauterine device. Further, the plaintiffs have alleged that Robins conspired with the Aetna Casualty and Surety Company, Robins' primary insurer, in order to hinder, delay, and obstruct claims against Robins in order to assert the statute of limitations defense against certain claimants.

As a result of these alleged activities, the plaintiffs contend that Robins caused injury to them through fraud and willful and malicious conduct, and, consequently, that the debts arising therefrom would otherwise be nondischargeable under 11 U.S.C. § 523(a). The plaintiffs also contend that

§ 1141(d) of the Bankruptcy Code is unconstitutional as an equal protection violation of the Due Process Clause of the Fifth Amendment, since corporate debtors are discharged from debts, such as those incurred by fraud or willful and malicious injury, that individual debtors would be unable to discharge. Section 523(a)(2) of the Bankruptcy Code prevents individuals from discharging debts incurred by fraud, and § 523(a)(6) prevents individuals from discharging debts incurred by a willful and malicious injury. *See* 11 U.S.C. §§ 523(a)(2), (6).[3]

In response to the complaints filed by the plaintiffs, Robins filed a motion to dismiss, pursuant to Bankruptcy Rule of Procedure 7012 and Federal Rule of Civil Procedure 12(b), on the grounds that § 1141(d) of the Bankruptcy Code is not unconstitutional because the absolute dischargeability of a reorganized corporate debtor is the result of a reasonable Congressional regulation concerning discharges in bankruptcy. Although the plaintiffs in Adversary Proceeding No. 85-1022-R have also asked the Court to dismiss Robins' petition as being in bad faith, this opinion is confined solely to the constitutional issue.[4]

## CONCLUSIONS OF LAW

As stated, the issue before the Court is whether or not 11 U.S.C. § 1141(d) denies

3. If the corporate debtor does not file a liquidation plan of arrangement, the discharge of its debts is automatic. If it is a liquidating Chapter 11, the corporate debtor does not receive a discharge of any of its debts. Because of this *statutory provision, either allowing all debts to be discharged or none to be discharged,* no notice has been given by the court in compliance with Bankruptcy Rule 4007.

Rule 4007 requires that the court give creditors thirty days notice of the time fixed for filing complaints to determine the dischargeability *of debts in the manner prescribed by* Bankruptcy Rule 2002. Moreover, Rule 4007 provides that complaints to determine dischargeability must be filed no later than 60 days following the first date set for the meeting of creditors under 11 U.S.C. § 341. Were this Court to find § 1141(d) unconstitutional, then obviously adequate notice should be given to all creditors of the opportunity to file complaints to

determine dischargeability under 11 U.S.C. § 523(a).

4. Because the issue of the constitutionality of 11 U.S.C. § 1141(d) was not expressly retained by the District Court in Administrative Order No. 1, and because the issue of dismissal of the case was expressly retained, it was the decision of District Judge Merhige and Bankruptcy Judge Shelley to hear the matters arising from the consolidated complaints at a joint hearing. The issue of dismissal, which should have been properly brought on by motion pursuant to 11 U.S.C. § 1112(b), was not taken up at the hearing on February 14, 1986 due to the lack of notice to all parties in interest as is required by Bankruptcy Rule 2002. District Judge Merhige granted a continuance on the issue of dismissal to allow the moving parties an opportunity to determine if they could arrange for the appropriate notice required by Rule 2002.

the plaintiffs equal protection of the law in contravention of the Due Process Clause of the Fifth Amendment of the United States Constitution. The basis for the challenge to the constitutionality of § 1141(d) is the provision for a corporate discharge of certain debts, upon the corporate debtor achieving confirmation of its non-liquidating reorganization plan, which would otherwise be nondischargeable by an individual debtor under 11 U.S.C. § 1141(d)(2) and 11 U.S.C. § 523(a).

The initial determination the Court must make in this proceeding is the proper standard of judicial review. In *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the United States Supreme Court, addressing the requirement of a filing fee in bankruptcy, held that bankruptcy legislation does not arise to the level of those rights which the Court has recognized as fundamental, and which require a compelling governmental interest before they can be significantly regulated. Instead, the Court held that laws regarding bankruptcy are "in the nature of economics and social welfare." *Kras*, 409 U.S. at 446, 93 S.Ct. at 638. As such, the proper standard of review of a congressional classification is that of rational relationship to a legitimate governmental interest. *Id.* See *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981).

*Kras* also noted that debtors have no constitutional right to the discharge of their debts. *Kras*, 409 U.S. at 446, 93 S.Ct. at 638. Moreover, "it might be argued, no creditor is constitutionally protected from discharge." *DuPhily v. DuPhily*, 52 B.R. 971, 976 (D.C.D.Del.1985). As a result, given the fact that a discharge of one's debts in bankruptcy is a Congressionally created benefit, regulations on discharges in bankruptcy must be upheld so long as they meet the minimum standard of a rational relationship to a legitimate governmental interest.

Whether or not Congress has abided by the rational basis test can be determined by a review of the legislative history and previous statutory enactments. To begin with, the language of § 1141(d) providing for a broader corporate discharge was not new to the Bankruptcy Reform Act of 1978. The substantially same provision existed under the Bankruptcy Act of 1898, as amended, in § 228(1) of Chapter X. Section 228(1) provided that, among other things, a discharge under Chapter X discharged a corporation "from all its debts and liabilities," while the provisions for an individual's discharge remained more restrictive. See 6A *Collier on Bankruptcy*, ¶ 11.18 (14th ed. 1978).

The predecessor to § 228(1) of Chapter X, section 77B of the Bankruptcy Act, was interpreted by the Fourth Circuit to allow an alleged willful and malicious act of the debtor to be discharged. Specifically, the court held that

the very kernel of a reorganization proceeding is the careful consideration given all outstanding liabilities, debts, and claims. Only in light of such an examination does it become possible for the bankruptcy court to determine whether the corporation as recapitalized can weather the financial storm.

*American Service Company v. Henderson*, 120 F.2d 525, 529 (4th Cir.1941); 6A *Collier on Bankruptcy*, ¶ 11.18 (14th ed. 1978).

In addition, in the legislative history of the Bankruptcy Reform Act of 1978, a Senate version of § 1141(d) which would have excepted certain tax liabilities from the corporate discharge provision was rejected. Specifically, it was noted that "it is necessary for a corporation or partnership undergoing reorganization to be able to present its creditors with a fixed list of liabilities upon which the creditors or third parties can make intelligent decisions. Retaining an exception for discharge with respect to nondischargeable taxes would leave an undesirable uncertainty surrounding reorganizations which is unacceptable." 124 Cong.Rec. H11,105 (daily ed. Sept. 28, 1978); S17,422 (daily ed. Oct. 6, 1978). Thus, it is clear from the legislative history that Congress intended to specifically in-

clude language in § 1141(d) which would provide corporations with a broader discharge than that for individuals.

The plaintiffs have asserted that it is just as necessary for an individual to have a "clean slate" to effectuate a reorganization as it is for a corporation. Accordingly, they argue the fact that a corporation receives a broader discharge is an improper discrimination between a "natural" person and an "artificial" person. *See Frost v. Corporation Commission of the State of Oklahoma,* 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1928). However, Congress has not arbitrarily discriminated between corporations and individuals because corporations are fundamentally different from individuals in both their organization and future earning capacity, important factors in formulating a plan of reorganization, and limiting a corporation's discharge to only those debts to which an individual would be entitled to discharge would inhibit the effectiveness of Chapter 11.

One of the reasons that corporations need the broader discharge as contemplated by Congress is that corporations face the special concerns of equity security holders. As has been asserted, the reorganized corporation's ownership and structure may be significantly different than that of the prefiling corporation. For example, if a corporation is faced with cramdown under § 1129(b) of the Code because a class of creditors has not accepted the plan, existing equity interests may have to be cancelled and new value contributed in order to maintain a continuity in management and control. Such continuity may be vital to certain corporate reorganizations where existing management capabilities are one of the corporation's principle assets. *See In re Pecht,* 13 B.C.D. 1317, 57 B.R. 137 (Bankr.E.D.Va.1986); *In re Marston Enterprises, Inc.,* 13 B.R. 514 (Bankr. E.D.N.Y.1981); *In re Landau Boat Company,* 13 B.R. 788 (Bankr.W.D.Mo.1981). If there is the possibility that a substantial portion of the debts that forced the corporation into bankruptcy will be nondischargeable, the likelihood that any new equity value would be contributed to the cor-

poration would be diminished and liquidation would be the more viable alternative. In a liquidation under Chapter 7, pursuant to 11 U.S.C. § 727(a)(1), or under Chapter 11, pursuant to 11 U.S.C. § 1141(d)(3), there would be no discharge for the corporate debtor. The probability is that creditors would receive less in liquidation than they would receive in reorganization.

Another reason for the broad corporate discharge, somewhat related to the above analysis, is the future earning capability of the reorganized corporation as opposed to the reorganized individual. As one commentator has observed,

in the case of business enterprises, there is a close relationship between the use of existing assets and future earning power. A natural person's future earning power may largely be a function of his intelligence, skill, industry, and other personal characteristics, but the future earning power of a business enterprise is in a large part a function to which its assets are devoted.

Rogers, *The Impairment of Secured Creditors' Rights in Reorganization: A Study of the Relationship between the Fifth Amendment and the Bankruptcy Clause,* 96 Harv.L.Rev. 973, 989 (1983). In other words, what a corporation can expect to earn down the road is largely tied to the assets that it has available to devote to the plan. If a large or significant portion of the corporate assets must be committed to pay pre-petition debts, the amount available for the future operation of the corporation will be limited from the outset, ultimately reducing the possibility of a successful reorganization and thereby working to the detriment of all creditors.

For the foregoing reasons, the Court cannot say that Congress' provision for a broader discharge for corporations than for individuals is not rationally related to a legitimate governmental interest. Indeed, the function of the discharge provision takes into account the unique needs of a corporate debtor and it encourages not only

continued operation, but participation from equity holders who, but for dischargeability of all debts in reorganization, may choose to allow liquidation of the corporation.

An appropriate Order will issue.

EXHIBIT A

In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.

EMPLOYER'S TAX IDENTIFICATION NO. 54–0486348

ADMINISTRATIVE ORDER NO. 1

(ORDER WITHDRAWING REFERENCE OF CASE AND PROCEEDINGS, REFERRING CERTAIN PROCEEDINGS TO BANKRUPTCY JUDGE, AND ESTABLISHING ADDITIONAL ADMINISTRATIVE PROCEDURES)

MERHIGE, District Judge.

On August 16, 1984, the Richmond Division of the United States District Court for the Eastern District of Virginia (the "District Court") entered an order by which it referred all cases under Title 11 of the United States Code, and all proceedings arising under Title 11 or arising in or related to cases under Title 11, to the bankruptcy judge in the Richmond Division (the "Bankruptcy Judge"). A true and correct copy of this order is attached hereto (hereinafter the "General Order of Reference").

On August 21, 1985, A.H. Robins Company, Incorporated (the "Debtor") commenced a Chapter 11 case under Title 11 of the United States Code in the Richmond Division of the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"), which case is entitled *In re A.H. Robins Company, Incorporated, Debtor,* and bears case No. 85–01307–R in the files of the Bankruptcy Court (hereinafter, the "Chapter 11 Case").

Pursuant to 28 U.S.C. §§ 1334 and 157(a) and the General Order of Reference, all proceedings in the Chapter 11 Case which arise under Title 11 of the United States Code or which arise in or are related to the Chapter 11 Case (collectively, the "Proceed-

ings"), have been automatically referred to the Bankruptcy Judge.

The Debtor has filed with the District Court a motion requesting withdrawal of the District Court's reference of the Chapter 11 Case and its Proceedings pursuant to 28 U.S.C. § 157(d), reference of certain Proceedings to the Bankruptcy Judge pursuant to 28 U.S.C. § 157(a), and the establishment of certain administrative procedures.

NOW THEREFORE, upon consideration of the Debtor's motion, good cause appearing therefor, it is hereby ORDERED:

1. The District Court's reference of the Chapter 11 Case and its Proceedings is hereby withdrawn pursuant to 28 U.S.C. § 157(d).

2. All Proceedings in the Chapter 11 Case are referred to the Bankruptcy Judge with the exception of the following Proceedings, each of which shall henceforth be known as a "Retained Proceeding" and shall be determined by the District Court:

(a) Proceedings involving the estimation or liquidation of any personal injury tort or wrongful death claims against the estate (collectively, "Tort Claims"), including, but not limited to those Proceedings which involve any of the following matters:

(1) motions to establish procedures for the filing and resolution of Tort Claims, including applicable bar dates;

(2) motions which request the coordination of administrative procedures and discovery in adversary proceedings or contested matters involving the estimation or liquidation of Tort Claims;

(3) requests for declaratory relief declaring the Debtor's alleged liability for Tort Claims;

(4) the estimation or liquidation of Tort Claims for purposes of allowance, confirmation of a plan of reorganization, or distribution;

(5) motions to terminate, annul, modify, or enforce the automatic stay of 11 U.S.C. § 362(a) in order to commence or continue with actions, cases, or any

proceedings involving a claim or cause of action against the Debtor or the estate based upon a Tort Claim; or

(6) requests for relief under 11 U.S.C. § 105 with respect to any Tort Claim;

(b) Motions to classify a claim pursuant to Bankruptcy Rule 3013;

(c) Motions for extensions of time for filing or acceptance of a plan of reorganization under 11 U.S.C. § 1121(d);

(d) Proceedings involving approval of disclosure statements;

(e) Proceedings involving confirmation of a plan of reorganization;

(f) Applications and motions under Bankruptcy Rules 2004 and 2005;

(g) Motions for the appointment of committees under 11 U.S.C. § 1102;

(h) Motions for conversion or dismissal of the Chapter 11 Case under 11 U.S.C. § 1112, or for abstention under 11 U.S.C. § 305;

(i) Motions for the appointment of a trustee or examiner under 11 U.S.C. § 1104 or for the fixing the duties of an examiner under 11 U.S.C. § 1106;

(j) Motions for compensation of services or reimbursement of expenses under 11 U.S.C. § 330 or for interim compensation under 11 U.S.C. § 331;

(k) Motions for abstention under 28 U.S.C. § 1334(c)(1) and/or § 1334(c)(2);

(1) Motions for transfer or change of venue of the Chapter 11 Case;

(m) Motions for remand of any action or proceeding which has been removed under 28 U.S.C. § 1452(a);

(n) Motions to determine whether a litigant has a right to trial by jury in any Proceeding actually commenced;

(o) Proceedings commenced to obtain an order or judgment enjoining another court or parties from proceeding in another court;

(p) Proceedings to enforce the automatic stay of 11 U.S.C. § 362(a), including Proceedings to enjoin persons from violating the stay or Proceedings for contempt based upon a violation of the stay; and

(q) Motions or applications which request an order establishing procedures for the administration of the Chapter 11 Case which procedures are not otherwise specifically provided for by either the Bankruptcy Rules or the Local Bankruptcy Rules.

3. The Bankruptcy Court shall maintain an open file for the Chapter 11 Case bearing the original docket number assigned to the Chapter 11 Case upon its commencement in that court by the Debtor.

4. All Proceedings referred to the Bankruptcy Court (hereinafter "Referred Proceedings"), whether referred pursuant to this Order or any subsequent order under 28 U.S.C. § 157(a), shall be administered by the Bankruptcy Court in the Debtor's Chapter 11 Case on file in the Bankruptcy Court and determined by the Bankruptcy Judge.

5. All pleadings and papers which are to be filed in Referred and/or Retained Proceedings shall be filed with the Clerk of the Bankruptcy Court and shall bear the title of the Bankruptcy Court, the caption of the Chapter 11 Case, and the docket number assigned by the Bankruptcy Court to the Chapter 11 Case, in addition to any other format required by the Bankruptcy Rules and the Local Bankruptcy Rules, such as an adversary proceeding caption if applicable.

6. The Clerk of the Bankruptcy Court is specially designated to receive pleadings and papers to be filed in Retained Proceedings. It shall be the responsibility of the party filing a pleading or paper in a Retained Proceeding to type the words "Retained Proceeding" directly beneath the title of the pleading or paper. The Clerk of the Bankruptcy Court shall transfer pleadings and papers filed in Retained Proceedings to the Clerk of the District Court for resolution if the pleading or paper requests relief.

7. Except as expressly required or permitted under 28 U.S.C. § 1409(b)-(e), all Retained Proceedings shall be commenced only in the Bankruptcy Court in the Chap-

ter 11 Case and shall be determined only by the District Court in Richmond, Virginia.

8. Except as expressly required or permitted under 28 U.S.C. § 1409(b)–(e), all Referred Proceedings shall be commenced only in the Bankruptcy Court in Richmond, Virginia.

9. This order shall be known as Administrative Order No. 1 ("Adm. Order 1").

10. Each order establishing procedures for the administration of the Chapter 11 Case, which procedures are not otherwise specifically provided for by either the Bankruptcy Rules or the Local Bankruptcy Rules, shall be made by the District Court and shall be entitled and numbered sequentially as an Administrative Order (or "Adm. Order").

11. To the extent they are not inconsistent with this Administrative Order and all subsequent Administrative Orders, the Bankruptcy Rules and the Local Bankruptcy Rules shall apply in all Proceedings in the Chapter 11 Case, whether or not the Proceedings are before the Bankruptcy Judge or the District Court.

12. The Debtor shall file a copy of this order with the Clerk of the Bankruptcy Court and shall serve a copy upon the United States Trustee.

DATED: Aug. 21, 1985.